UNITED STATES of America, Appellee,

v.

Rochelle Ardall CROWDER, Appellant.

UNITED STATES of America, Appellee,

v.

Horace L. DAVIS, Appellant.

Nos. 92–3133, 93–3059 and 94–3108.

United States Court of Appeals,
District of Columbia Circuit.

Argued En Banc Jan. 28, 1998.

Decided May 1, 1998.

Neil H. Jaffee, Assistant Federal Public Defender, Washington, DC, argued the cause, for appellant Horace Lee Davis, and Gerald I. Fisher, Washington, DC, appointed by the court, argued the cause, for appellant Rochelle Ardall Crowder. With them on the joint and supplemental briefs were A.J. Kramer, Federal Public Defender, Santha Sonenberg and Lisa B. Wright, Assistant Federal Public Defenders.

Roy W. McLeese, III, Assistant U.S. Attorney, Washington, DC, argued the causes, for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Attorney at the time the supplemental briefs were filed, and John R. Fisher, Assistant U.S. Attorney.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Dissenting opinion filed by Circuit Judge TATEL, in which Chief Judge EDWARDS and Circuit Judges WALD and SILBERMAN join.

Dissenting opinion filed by Circuit Judge SILBERMAN.

RANDOLPH, Circuit Judge:

The principal question in these cases is whether a criminal defendant may, over the government's objection, offer to concede an element of an offense (such as knowledge or intent) and thereby (1) preclude the government from introducing evidence under Rule 404(b), FED. R. EVID., to prove that element, and (2) obtain an instruction that the jury need not consider or decide that element. When we first heard these cases *en banc,* a divided court answered the question this way: whenever there is "a defendant's offer to concede knowledge and intent combined with an explicit jury instruction that the Government no longer needs to prove either element," Rule 404(b) renders the bad acts evidence inadmissible. *United States v. Crowder (Crowder I),* 87 F.3d 1405, 1410 (D.C.Cir.1996). On the government's petition for a writ of certiorari, the Supreme Court granted the writ, vacated our judgment and remanded the cases for reconsideration in light of the intervening decision in *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). *See United States v. Crowder,* —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997). We now hold that despite a defendant's unequivocal offer to stipulate to an element of an offense, Rule 404(b) does not preclude the government from introducing evidence of other bad acts to prove that element.

I

A

For ease of reference we will again recount the facts of these cases. In separate jury trials, both defendants were convicted of drug offenses, Crowder for possessing heroin and crack cocaine with intent to distribute, Davis for distributing crack cocaine and for possessing crack with intent to distribute.

*Crowder.* Police officers driving along the 1300 block of Newton Street, N.W., Washington, D.C., saw Crowder engage in what appeared to be a drug transaction, exchanging a small object for cash. The officers stopped their car and gestured for Crowder to approach. Crowder started to come closer but then turned and ran. During the ensuing chase Crowder discarded a brown paper bag containing 93 ziplock bags of crack cocaine and 38 wax-paper packets of heroin. When the officers caught up with him, they found

that he was carrying a beeper and $988 in small denominations.

Crowder's first trial ended in a mistrial. Before the retrial, the government gave notice that it would seek to prove Crowder's knowledge, intent and modus operandi by introducing evidence to show that Crowder sold crack cocaine to an undercover officer on the same block on Newton Street seven months after his arrest in this case. Crowder objected to the evidence, partly on the basis that he was willing to stipulate that the amounts of drugs "seized [by the police in this case] were consistent with distribution" so that "anybody who possessed those drugs possessed them with the intent to distribute." J.A. 178, 203.

The district court took the matter under advisement. After the government presented its case-in-chief, Crowder mounted a defense based on the theory that the police had framed him. Through nine witnesses, including his nephew, his father, the mother of his child, and Newton Street neighbors, he tried to show that the officers came looking for him to enlist his aid in a homicide investigation, that the transaction the officers observed consisted merely of the passing of a cigarette, that he had the $988 to pay for repairs to his family's house, and that his child's mother had loaned him the beeper so that he could keep in touch with her.

At the close of the defense case, the government renewed its effort to introduce the evidence of Crowder's other drug offense. As to Crowder's pretrial offer to stipulate, the government argued that Crowder had now contested his intent to distribute, and that the evidence of his other drug deal had legitimate probative value apart from its bearing on intent, which is all the proposed stipulation addressed.

The district court first took up Rule 404(b): It seems to the court that the first question is whether or not this evidence is probative of anything in the case, and it seems to the court that this evidence is probative, because Mr. Crowder is trying to suggest in his defense and I think, if we look at the evidence in the defense, not just Mr. Crowder's testimony, that all of this was just a coincidence, it was a coinci-

dence that he had the $900 in his possession, it's a coincidence that he had a beeper in his possession, and that everything else took place, presumably, the running away and the officer chasing him, and the officer finding a large quantity of drugs in the alley, had nothing at all to do with Mr. Crowder. So, to me, that raises an issue of intent, raises an issue of knowledge, perhaps raises an issue, as was raised in the *Watson* case, of his knowledge of even the drug trade. It seems to me, based upon that evidence, that the 404(b) evidence is probative.

J.A. 242–43.

Having found the evidence probative for a proper purpose under Rule 404(b), the court turned to Federal Rule of Evidence 403 and concluded that the probative value of Crowder's other drug crime was not substantially "outweighed by potential undue prejudice to Mr. Crowder." J.A. 248. The court noted the highly probative nature of the evidence to prove intent and knowledge, particularly in view of Crowder's defense that "he doesn't know anything about it ... [and] this is all a setup by the police." J.A. 249. When the court admitted the evidence in the government's. rebuttal case, it gave a limiting instruction, which it repeated during its jury charge.

*Davis.* An undercover officer purchased a rock of crack cocaine from Horace Lee Davis on the 900 block of 5th Street, N.W. Davis had obtained the crack from a man sitting in a nearby car. After the transaction, the undercover officer left the scene and broadcast a description of Davis and the other man. Both were stopped a short time later and positively identified by the undercover officer. The police apprehended Davis as he was opening the door to the car from which he had obtained the rock. A search of the car uncovered more than 20 grams of crack as well as $40 in cash. The cash included pre-recorded bills the officer had used to buy the rock from Davis.

Davis put on a defense of misidentification. He explained that he had purchased a beer from a nearby liquor store and had simply walked out of the store just before his arrest.

Before trial, the government gave notice that it intended to introduce evidence of three prior cocaine sales by Davis, all in the vicinity of a shelter at 425 2nd Street, N.W., only a few blocks from the site of the charged offense. The government sought to introduce these prior acts to prove essential elements of Davis's crime—knowledge and intent. Davis objected, in part on the basis of his proposed stipulation "that the person who sold the undercover officer the drugs in this case had the intent to distribute any and all drugs recovered by the police, both through their purchase and through the seizure from [the] car, and that that individual also knew of the drugs recovered from [the] car." J.A. 79 n.1. The district court ruled that the government did not have to accept Davis's concession and could prove the required elements of knowledge and intent through evidence of Davis's prior acts. When the court admitted evidence of the prior acts, it gave a limiting instruction, and reiterated the instruction in its jury charge.

### B

While the government's certiorari petition in these cases was pending, the Supreme Court handed down *Old Chief v. United States.* There the defendant had been charged with violating federal assault and weapons statutes, including 18 U.S.C. § 922(g)(1), which prohibits persons previously convicted of certain felonies from possessing a firearm. The defendant's prior conviction was for "assault causing serious bodily injury." 519 U.S. at ——, 117 S.Ct. at 647. Wanting to keep these details from the jury, the defendant offered to stipulate that he had an unspecified conviction of the sort described in § 922(g)(1). The government refused the defense offer, the trial court admitted the order of judgment and commitment in the assault case, and the court of appeals affirmed.

Dividing five to four, the Supreme Court reversed. The Court first rejected the de-

fendant's argument that his offer to stipulate rendered the evidence of his prior conviction irrelevant and reaffirmed "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away," 519 U.S. at ——, 117 S.Ct. at 654. The Court then went on to carve out a narrow exception to that rule, applicable only to "the element of felony-convict status," *id.* at ——, 117 S.Ct. at 655. Concluding that there was "no cognizable difference between" a judgment and conviction order proving felony convict status and an admission or stipulation to that effect, and that a description of the prior offense might unduly prejudice the defendant, the Court held that the Rule 403 balance of probative value versus unfair prejudice tilted in favor of excluding the government's proof.

### II

Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

Our original *en banc* decision rested on the following theory: "a defendant's offer to concede knowledge and intent combined with an explicit jury instruction that the Government no longer needs to prove either element" results in the other crimes evidence having, as "its only purpose," proof of the defendant's propensity, which Rule 404(b) forbids. *Crowder I,* 87 F.3d at 1410. The idea was that the proposed stipulation (and instruction) "completely removed" knowledge and intent from the trial; that evidence of the defendant's other crimes therefore could no longer be considered relevant to those elements; and that if the evidence had no other nonpropensity purpose, its only function would be to prove what Rule 404(b) barred. *See id.*[1]

---

1. The *en banc* majority expressed agreement with *United States v. Mohel,* 604 F.2d 748, 751 (2d Cir.1979), that "under Rule 404(b) bad acts evidence must be relevant to an 'actual' issue and that an offer to stipulate to an issue removes it

from the case." *Crowder I,* 87 F.3d at 1410. A clear majority of the other circuits reject the Second Circuit's position. The cases are discussed in an addendum to this opinion.

Tested against the Supreme Court's *Old Chief* decision, the theory of *Crowder I* fails. *See* 1 STEPHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL 385–86 (7th ed.1998). *Old Chief*'s holding ultimately rested on Federal Rule of Evidence 403, which authorizes trial courts to exclude evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." But before getting to Rule 403, the Court had to dispose of a preliminary question, a question that bears directly on the *Crowder I* theory. The defendant in *Old Chief* claimed, as *Crowder I* held, that a defense stipulation to an element of a crime completely removes the element from trial, thereby rendering other evidence of the element irrelevant and thus inadmissible. *See* FED.R.EVID. 402 ("Evidence which is not relevant is not admissible."). The Supreme Court rejected this argument. A defendant's offer to stipulate or concede an element of an offense, the Court concluded, does not deprive the government's evidence of relevance. *See Old Chief*, 519 U.S. at ——, 117 S.Ct. at 649. There does not have to be an "actual issue" about the facts sought to be proven. As the Court put it, "evidentiary relevance under Rule 401 [is not] affected by the availability of alternative proofs of the element," such as a defendant's concession or offer to stipulate. *Id.* In support, the Court quoted the statement in the advisory committee notes to Rule 401 that the "fact to which the evidence is directed need not be in dispute." *Id.*[2] The Court then summed up: "If, then, relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial, cumulative or the like, its relevance notwith-

standing," *id.* at ——, 117 S.Ct. at 650—a thesis the Court reiterated several times later in its opinion. *Id.* at ——, —— n. 7, ——–——, ——–——, 117 S.Ct. at 651, 651 n. 7, 653–54, 655–56.

From this aspect of *Old Chief*, several propositions necessarily follow. First, if the government's other crimes evidence would have been relevant under Rule 401—if it would have made it more likely with the evidence than without it that the defendants had the requisite knowledge or intent—the evidence remained relevant despite the defendants' offers to stipulate. Second, the government therefore could offer this evidence for the purpose of proving something Rule 404(b) expressly permits, namely, the defendants' knowledge or intent. We have recognized before that although the first sentence of Rule 404(b) is "framed restrictively," the rule itself "is quite permissive," prohibiting the admission of other crimes evidence "in but one circumstance"—for the purpose of proving that a person's actions conformed to his character. *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C.Cir.1991). In other words, properly viewed, the first sentence of Rule 404(b) bars not evidence as such, but a theory of admissibility. Third, compliance with Rule 404(b) does not assure admission of the other crimes evidence. *Old Chief* stated that if "there were a justification for receiving evidence of the [defendant's felony conviction] on some issue other than status [such as knowledge or intent], Rule 404(b) guarantees the opportunity to seek its admission." 519 U.S. at ——, 117 S.Ct. at 655. The "opportunity," not the "admission," is what Rule 404(b) "guarantees."[3] But if a trial court were to exclude the government's evidence of bad acts, the court could not do so "on the ground that the other evidence"—

---

**2.** Rule 401 is derived from a provision of the California Evidence Code defining "relevant evidence" as evidence of "any disputed fact that is of consequence to the determination of the action." CAL. EVID.CODE § 210 (West 1995). In drafting Rule 401, the framers deleted the word "disputed," a deletion representing "a significant change in the law." 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5164, at 44 (1978). Professors Wright and Graham suggest that the framers' decision to delete "disputed" was "sponsored" by the Justice Department to prevent courts from concluding,

as we had in *Crowder I*, "that the defense can bar the introduction of [other offense evidence] by offering to stipulate to the fact it is supposed to prove." *Id.*

**3.** The Supreme Court made a similar point in *Huddleston v. United States*, 485 U.S. 681, 688, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988): if evidence is offered for a proper purpose under Rule 404(b), "the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403."

the proposed stipulation backed up by a jury instruction—"rendered it 'irrelevant,'" *Old Chief,* 519 U.S. at ——, 117 S.Ct. at 650. Instead, as already mentioned, exclusion would have to be on the basis that the evidence is "unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Id.*

In other important ways, *Old Chief* stands at odds with our original decision in these cases. According to *Crowder I,* the government may not introduce its bad acts evidence because a "defendant's concession of intent and knowledge deprives the evidence of any *value* ...." 87 F.3d at 1407 (italics added). There are several problems lurking within this formulation. For one thing, it hands to criminal defendants the ability to control the government's presentation of its case. Yet all nine Justices in *Old Chief* agreed with "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." 519 U.S. at ——, 117 S.Ct. at 653; *see id.* at —— – ——, 117 S.Ct. at 658–60 (dissenting opinion).

For another thing, every Justice disagreed with the notion that a stipulation has the same evidentiary value as the government's proof. Even when coupled with a jury instruction that the fact stipulated must be considered proven, a stipulation cannot give "the Government everything the evidence could show," *Crowder I,* 87 F.3d at 1410. The "evidentiary account of what a defendant has thought and done can accomplish what no abstract statements ever could" (*Old Chief,* 519 U.S. at —— – ——, 117 S.Ct. at 653–54); "[i]f suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, 'never mind what's behind the door,' and jurors may well wonder what they are being kept from knowing" (*id.* at ——, 117 S.Ct. at 654); a "syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it" (*id.*); jurors "who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters" (*id.*); *see also id.* at ——, 117 S.Ct. at 659 (dissenting opinion). There is, in short, a "need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be," and so to prevent nullification or unjustified acquittal. *Id.* at ——, 117 S.Ct. at 654.

The Supreme Court made these points to distinguish between "stipulations to the status element of a crime, which can be forced upon the prosecution, and stipulations to other elements of a crime, which the prosecution should remain free to reject." 1 SALTZBURG, *supra,* at 385. Proof of status, the Court said, concerns an element that is "wholly independent[ ] of the concrete events" of the charged crime. *Old Chief,* 519 U.S. at —— – ——, 117 S.Ct. at 654–55. In contrast, the elements of intent and knowledge are at the core of the offenses charged in the cases before us. Replacing proof of these elements with stipulations creates "a gap in the story of a defendant's subsequent criminality." *Id.* at ——, 117 S.Ct. at 655. To be sure, other crimes evidence will typically relate to events more or less removed in time from the charged offense. But that is true of many other kinds of evidence. A husband's prior physical abuse of his wife while he was in a jealous rage may suggest his motive for murdering her; an incriminating statement made after the offense may reveal intent; tangible evidence found later may suggest identity. Evidence about what the defendant said or did at other times can be a critical part of the story of a crime, and may be introduced to prove what the defendant was thinking or doing at the time of the offense. This is true regardless whether the defendant's actions on those other occasions were in themselves criminal. *Old Chief* establishes that the prosecution cannot be forced to stipulate away the force of such evidence.

The Supreme Court also distinguished Old Chief's case on the ground that there was "no cognizable difference" between the proof the prosecution sought to present—a document reflecting the prior conviction—and the stipulation the defendant offered. *Id.* As to the stipulation, Old Chief was willing to con-

cede that *he* personally had the requisite prior felony conviction.

The stipulations Crowder and Davis proposed were of an entirely different sort. Both were of uncertain and doubtful significance. Crowder was willing to stipulate only that "anybody who possessed those drugs possessed them with the intent to distribute." But "anybody" was not on trial. Crowder was. And it was Crowder's intent, not "anybody's," that the prosecution had to establish to the jury's satisfaction. The stipulation Davis offered is of a piece. It mentioned only some hypothetical drug dealer, some "person." Yet the prosecution's evidence of Davis's prior crack cocaine sales—sales close in time and place to those charged in the indictment—was not meant to show that *someone* had intent and knowledge. The evidence was introduced to prove that Davis had the intent to distribute the crack and that Davis knew what he was possessing. Davis's proposed stipulation could not possibly have substituted for such proof. It did not even mention him by name. Far from a choice between "propositions of slightly varying abstraction," the choice in these cases was between concrete evidence of the defendants' actions giving rise to natural and sensible inferences, and abstract stipulations about hypothetical persons not on trial.[4]

The government's proof of Crowder's other crime also had legitimate probative force with respect to matters beyond those encompassed in his proposed stipulation. A "piece of evidence," the Court wrote in *Old Chief*, "may address any number of separate elements, striking hard just because it shows so much at once," 519 U.S. at —— ——, 117 S.Ct. at 653. Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like. Proof of an individual's intent to commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago. *See Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 296, 12 S.Ct. 909, 912–13, 36 L.Ed. 706 (1892). In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits. Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact—motive—from which it could in turn infer the element of possession. Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

The multiple utility of Rule 404(b) evidence is illustrated in Crowder's case. *See also United States v. Latney*, 108 F.3d 1446, 1448–50 (D.C.Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997); *United States v. Harrison*, 679 F.2d 942, 948 (D.C.Cir.1982). The trial court permitted the prosecution to introduce evidence of Crowder's other crime to prove not only his intent to distribute, but also his "knowledge of the substance within his possession."[5] One of the charges against Crowder was possessing with intent to distribute crack cocaine.[6] Crowder threw away a brown pa-

***

4. Although neither Crowder nor Davis proposed a jury instruction to encompass their stipulations, *Crowder I* devised a model charge in an effort to "ensure that the jury clearly understands that the concession releases the Government from its burden of proof on the conceded elements," 87 F.3d at 1411. The model charge improved on the language of Crowder's and Davis's stipulations, but as a substitute for evidence, it contradicted much of *Old Chief*. A "syllogism," the Supreme Court wrote, is "not a story." 519 U.S. at ——, 117 S.Ct. at 654. The Court issued a firm warning against replacing a narrative, which jurors are entitled to expect, with "abstract statements" in the form of jury instructions, which can only make jurors "wonder what they are being kept from knowing." *Id.* at —— ——, ——, 117 S.Ct. at 653–54, 654.

5. A defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them, and so forth. Evidence of a defendant's experience in dealing drugs—evidence, that is, of his "bad acts"—thus may be a "brick" in the "wall" of evidence needed to prove possession. *See* Fed R.Evid 401, advisory committee notes.

6. For a jury to find a defendant guilty of that offense, the government must prove, among other things, that the defendant possessed crack cocaine, that he did so knowingly and intentionally—that is, "consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently"—and that when the defendant possessed

per bag as he ran from the police to avoid arrest. The paper bag contained wax-paper packets of heroin and ziplock bags of crack. Some of the ziplock bags were clear; others were dark. The clear bags contained a larger amount of crack than the dark bags. The government's other-offense evidence showed that several months after his arrest in this case, the police caught Crowder selling crack cocaine on the same block. Crowder held up two ziplock bags to an undercover officer. One bag was clear; he offered it for $20. The other bag was dark; it contained a smaller amount of crack of less purity; he offered it for $10. As the government told the court, Crowder's other offense was thus probative of several matters "of consequence" at trial. *See* FED.R.EVID. 401. In terms of Rule 401, it was more probable with the evidence than without it that Crowder intended to distribute the crack cocaine in the brown paper bag. On the other occasion when he had crack cocaine in his possession, he sold it. It was more probable with the evidence than without it that Crowder knew the material in the ziplock bags was crack cocaine, just as he knew the substance in the ziplock bag he sold to the undercover officer was crack cocaine. And it was more probable with the evidence than without it that Crowder knowingly possessed the crack cocaine recovered from the brown paper bag. Crowder's offer to stipulate dealt only with someone's intent and therefore did not even come close to covering everything the government's Rule 404(b) evidence legitimately proved against him.

\* \* \*

For all of these reasons, upon reconsideration of our earlier decision in light of *Old Chief* we hold that a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion. *See Crowder I*, 87 F.3d at 1411. Other rules of evidence may bear on the admissibility of evidence satisfying Rule 404(b) and we will get to them next. For now it is enough to repeat the words of the advisory committee on Rule 404(b): if evidence is offered for a purpose Rule 404(b) permits, such as proving knowledge or intent, Rule 404(b) "does not require that the evidence be excluded."

### III

While Rule 404(b) does not require the exclusion of bad acts evidence offered for a purpose the rule recognizes as legitimate, other evidentiary rules might. For instance, offering the evidence for a proper purpose will satisfy Rule 404(b), but it will not in itself satisfy the relevancy standards of Rules 401 and 402. As Professor James explained in a highly-regarded article, to "determine the relevancy of an offered item of evidence one must first discover to what proposition it is supposed to be relevant." [7] The government must identify which of the matters listed in Rule 404(b)—"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"—it is intending to prove by the other crimes evidence. If the defense objects, the court must then satisfy itself that the evidence is relevant to that matter. *See Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).[8]

In the cases before us, neither defendant contested the relevancy of the other crimes evidence to his intent, except on the basis that their proposed stipulations took intent out of the case. *Old Chief*, as we have discussed, rejected that argument. And so we move on to another hurdle, Rule 403.

---

the crack, he had the specific intent to distribute it. See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.29 (4th ed.1993).

**7.** George F. James, *Relevancy, Probability and the Law*, 29 CAL. L.REV. 689, 696 n.15 (1941); *see also* 1 MCCORMICK ON EVIDENCE § 185 (John William Strong ed., 4th ed.1992). The advisory committee notes cite and rely upon Professor James'

work and Rule 401 adopts the test of relevancy he proposed in 1941.

**8.** For instance, if a defendant were charged with distributing heroin, the government would be hard pressed to demonstrate why evidence of the defendant's earlier commission of a rape was relevant to anything properly provable under Rule 404(b).

The familiar language of Rule 403 is: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." In these cases, the concern about "prejudice" focused on the danger of the jury using the other crimes evidence in a way the rules do not permit—to conclude that because the defendant committed some other crime, he must have committed the one charged in the indictment. This danger, of course, will be present in every Rule 404(b) case. But that alone cannot give rise to a *per se* rule of exclusion, as Crowder and Davis argued when we first heard their cases *en banc.* In adopting the Federal Rules of Evidence, Congress "was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Huddleston,* 485 U.S. at 688–89, 108 S.Ct. at 1501; *see also* H.R.REP. No. 93–650, at 7 (1973) (noting that Rule 404(b)'s second sentence is intended to place emphasis on admissibility). As to Rule 403, each case will turn on the discretionary judgment of the trial court and its assessment, not of relevance, but of the evidentiary value of the government's Rule 404(b) evidence. On the same side of the balance, the trial court will take into account the effect of a limiting jury instruction to protect the rights of the accused. *See* FED. R.EVID. 403, advisory committee notes.

■ Crowder and Davis maintained, however, that whenever a defendant offers to stipulate to intent, as both purported to do here, the Rule 403 balance will always tip in favor of exclusion. *See* Joint Brief for Appellants *In Banc* at 25, *Crowder I.* We agree that trial courts may take offers to stipulate into account in making their Rule 403 determinations. *See* FED.R.EVID. 403, advisory committee notes ("The availability of other means of proof may also be an appropriate factor."). But we do not agree that the existence of the offer will necessarily be decisive. Here the proposed stipulations were ambiguous, conditional and tentative. Neither mentioned the defendant directly. At no point in their trials did either defendant propose a jury instruction requiring the jury to find the conceded element of intent. That

such an instruction might be needed if their proposed stipulations were to have any force is something the defendants acknowledged for the first time during the oral argument in *Crowder I.* The judges who presided at their trials could not possibly have anticipated the model jury instruction that later developed (*see Crowder I,* 87 F.3d at 1411), and their failure to do so was neither "plain" nor "error." *Old Chief* warns against using Rule 403 to replace the prosecution's evidence with a jury instruction of the sort devised in *Crowder I. See* note 4, *supra.*

■ In short, the Rule 403 inquiry in each case involving Rule 404(b) evidence will be case-specific. There can be no "mechanical solution," no *per se* rule of the sort Crowder and Davis advocate.

We have considered the defendants' other arguments and reject them. The convictions are affirmed.

*So ordered.*

## ADDENDUM

As we mentioned in footnote 1 of the opinion, *United States v. Mohel,* 604 F.2d 748, 751 (2d Cir.1979), held that "under Rule 404(b) bad acts evidence must be relevant to an 'actual' issue and that an offer to stipulate to an issue removes it from the case." So far as we can tell, this is the general rule in both the Second and the Eleventh Circuits, although the Eleventh Circuit has never reversed a conviction on this basis and appears to have embraced a contrary position in earlier cases. *See, e.g., United States v. Colon,* 880 F.2d 650, 660 (2d Cir.1989); *United States v. Ortiz,* 857 F.2d 900, 903–04 (2d Cir.1988); *United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir.1980); *United States v. Manafzadeh,* 592 F.2d 81, 87 (2d Cir.1979); *United States v. Tokars,* 95 F.3d 1520, 1537 (11th Cir.1996); *United States v. Taylor,* 17 F.3d 333, 338 (11th Cir.1994); *United States v. Costa,* 947 F.2d 919, 925 (11th Cir.1991); *United States v. Hernandez,* 896 F.2d 513, 522 (11th Cir.1990); *United States v. Williford,* 764 F.2d 1493, 1498 (11th Cir.1985) ("This circuit has refused to adopt a *per se* rule either for or against admission of evi-

dence when that evidence is relevant to an issue to which the defendant offers to stipulate. Rather, we analyze the offer to stipulate as one factor in making the Rule 403 determination."); *United States v. O'Shea*, 724 F.2d 1514, 1516 (11th Cir.1984) ("As a general rule, a party may not preclude his adversary's offer of proof by admission or stipulation."). ·

Other circuits have rejected the position of the Second Circuit, concluding that bad acts evidence may be admissible to prove an element of a crime regardless whether that element is "in dispute." These include the Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits. *See, e.g., United States v. Hernandez*, 975 F.2d 1035, 1040 (4th Cir. 1992); *United States v. Wallace*, 32 F.3d 921, 927–28 (5th Cir.1994); *United States v. Ponce*, 8 F.3d 989, 993–94 (5th Cir.1993); *United States v. Davis*, 792 F.2d 1299, 1305 (5th Cir.1986); *United States v. Spletzer*, 535 F.2d 950, 955 (5th Cir.1976); *United States v. Myers*, 123 F.3d 350, 363 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 611, 139 L.Ed.2d 498 (1997); *United States v. Mauldin*, 109 F.3d 1159, 1161 (6th Cir.1997); *United States v. Murphy*, 107 F.3d 1199, 1206–07 (6th Cir.1997); *United States v. Johnson*, 27 F.3d 1186, 1192–93 (6th Cir. 1994); *United States v. Hebeka*, 25 F.3d 287, 291 (6th Cir.1994); *United States v. Zalman*, 870 F.2d 1047, 1056 (6th Cir.1989); *United States v. Brown*, 34 F.3d 569, 573 (7th Cir. 1994); *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.1989); *United States v. Allen*, 798 F.2d 985, 1001 (7th Cir.1986); *United States v. Liefer*, 778 F.2d 1236, 1240– 43 (7th Cir.1985); *United States v. Chaimson*, 760 F.2d 798, 805–06 (7th Cir.1985); *United States v. Mayans*, 17 F.3d 1174, 1182 (9th Cir.1994); *United States v. Jones*, 982 F.2d 380, 382–83 (9th Cir.1992); *United States v. Hadley*, 918 F.2d 848, 851–52 (9th Cir.1990); *United States v. Gano*, 560 F.2d 990, 993 (10th Cir.1977).

Still other circuits have been somewhat equivocal. The First Circuit, while suggesting that a defendant's offer to stipulate to an element renders evidence of other bad acts inadmissible to prove that element, also has stated that "[i]n the final analysis, ... whether such an offer is accepted remains in the sound discretion of the district judge." *United States v. Garcia*, 983 F.2d 1160, 1175 (1st Cir.1993); *see United States v. Williams*, 985 F.2d 634, 637 (1st Cir.1993); *United States v. Ferrer–Cruz*, 899 F.2d 135, 138 (1st Cir.1990). The Third Circuit has noted that "district courts should generally deem prior bad acts evidence inadmissible to prove an issue that the defendant makes clear he is not contesting" but has refused to adopt a *per se* rule of exclusion. *United States v. Jemal*, 26 F.3d 1267, 1274 (3d Cir.1994); *see United States v. Sheeran*, 699 F.2d 112, 118 n. 12 (3d Cir.1983); *United States v. Provenzano*, 620 F.2d 985, 1003–04 (3d Cir.1980).

. The Eighth Circuit seems to have taken inconsistent positions on the issue. *Compare United States v. Sumner*, 119 F.3d 658, 660– 61 (8th Cir.1997) (supporting *per se* rule of exclusion), *United States v. Moore*, 98 F.3d 347, 349–50 (8th Cir.1996) (same), *United States v. Thomas*, 58 F.3d 1318, 1321–23 (8th Cir.1995) (same), *and United States v. Jenkins*, 7 F.3d 803, 806–07 (8th Cir.1993) (same), *with United States v. Crouch*, 46 F.3d 871, 875 (8th Cir.1995) (reading *Jenkins* narrowly), *United States v. Barry*, 133 F.3d 580, ·582 (8th Cir.1998) (acknowledging as general rule of circuit that "the government is not bound by a defendant's offer to stipulate") (quotation marks and citation omitted), *United States v. DeAngelo*, 13 F.3d 1228, 1231 (8th Cir.1994) (same), *United States v. Hiland*, 909 F.2d 1114, 1134 (8th Cir.1990) (same), *and United States v. Bass*, 794 F.2d 1305, 1312 n. 6 (8th Cir.1986) (same). In a decision handed down after *Old Chief,* the Eighth Circuit acknowledged that the Supreme Court's decision may have resolved the Rule 404(b)-stipulation question once and for all. *See United States v. Spence*, 125 F.3d 1192, 1194 n. 2 (8th Cir.1997).

. .

TATEL, Circuit Judge, with whom EDWARDS, Chief Judge, WALD, and SILBERMAN, Circuit Judges, join, dissenting:

Although Rule 404(b)'s first sentence— "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith"—restrains prosecutors and sometimes deprives juries of relevant evidence, Congress determined that the Rule's valuable protection against the prejudice of bad acts evidence outweighs its costs. Substituting its own policy judgment for Congress', this court now converts Rule 404(b) from a requirement that courts inquire into the purposes of character evidence—"[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character," *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988)—into a question of relevance. Since bad acts evidence is almost always relevant, the court has effectively erased Rule 404(b)'s first sentence, making all character evidence admissible under Rule 404(b)'s second sentence, subject to Rule 403 balancing. Nothing in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), requires this result, nor does *Old Chief* call for abandoning our former *en banc* decision in these cases. I respectfully dissent.

Over a century ago, the Supreme Court recognized that evidence of defendants' prior bad acts "only tend[s] to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that [the defendants] were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings." *Boyd v. United States*, 142 U.S. 450, 458, 12 S.Ct. 292, 295, 35 L.Ed. 1077 (1892). Eighty years later, the drafters of the Federal Rules of Evidence likewise recognized the powerful and invidious tendency of character evidence to shift jurors' focus from defendants' actions to their character, noting that it " 'subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.' " FED. R. EVID. 404(a) advisory committee's notes (1972 Proposed Rules) (quoting California Law Revision Commission, Report, Record and Studies 615 (1964)).

Rule 404(b)'s first sentence excludes bad acts evidence not for lack of relevance—to the contrary, bad acts evidence is highly relevant—but because using the evidence causes undue prejudice. "The overriding policy of excluding such evidence, despite its admitted probative value," the Supreme Court has explained, "is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948). Elaborating further in *Old Chief*, the Court said that " '[a]lthough ... "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance.' " *Old Chief*, 519 U.S. at ——, 117 S.Ct. at 650 (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982) (Breyer, J.)). Far from irrelevant, propensity evidence tends to "overpersuade" the jury, *Michelson*, 335 U.S. at 476, 69 S.Ct. at 218–19, powerfully aiding the prosecution with its inexorable implication that a person who once committed a bad act probably also did the bad act for which he is on trial. Rule 404(b)'s first sentence thus unambiguously prohibits the government from using character evidence to show propensity, excluding it to ensure that " 'a defendant [is] tried for what he did, not for who he is.' " *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C.Cir.1985) (quoting *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir.1977)). Because " 'it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence,' " *United States v. Dockery*, 955 F.2d 50, 53 (D.C.Cir.1992) (quoting *Daniels*, 770 F.2d at 1118), prohibiting the use of bad acts evidence to show propensity promotes fairer trials.

Prejudicial though it is, bad acts evidence can be highly probative of many things the government may legitimately need to prove, such as knowledge, intent, or motive. Rule 404(b) strikes the balance between the prejudicial effect of bad acts evidence and its probative value through a two-step process. The court first determines whether the evi-

dence's only purpose is to prove propensity. Is the putative issue for which it is offered uncontested? *See United States v. Foskey,* 636 F.2d 517, 524 n. 5 (D.C.Cir.1980) (prosecution could not offer character evidence to prove identity where identity was not an issue) (citing *United States v. James,* 555 F.2d 992, 1000 & n. 46 (D.C.Cir.1977)). Has the defendant, as in these cases, conceded the non-propensity element for which the government offered the evidence? *See United States v. Mohel,* 604 F.2d 748, 753 (2d Cir.1979). Or has the government failed to convince the court of the authenticity of its proffered nonpropensity reasons? If the answer to any of these questions is yes, the court must exclude the evidence under Rule 404(b)'s first sentence. But if the government articulates a material and legitimate non-propensity purpose for the evidence, it becomes admissible under Rule 404(b)'s second sentence, subject to Rule 403 balancing. By its decision today, this court essentially eliminates the first step of this analysis.

Abandoning our original *en banc* decision in *Crowder I,* the court reaches this result by relying on *Old Chief* and the unremarkable proposition that propensity evidence remains relevant under Rules 401 and 402 even after a defendant completely removes its non-propensity purposes from the case through concession and agreement to a "must convict" jury instruction. But *Crowder I* never held that a defendant's concession renders bad acts evidence *irrelevant* under Rule 402. Instead, it held that the concession makes the evidence *inadmissible* under Rule 404(b)'s first sentence. *United States v. Crowder (Crowder I),* 87 F.3d 1405, 1407 (D.C.Cir. 1996), *vacated,* —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997). An unambiguous stipulation and jury instruction, *Crowder I* explained, so thoroughly drains the evidence's non-propensity value for the prosecution's case that to admit the evidence would unduly prejudice the jury. *Id.* at 1410 (defendant's concession "gives the Government everything the evidence could show ... without risk that the jury will use the evidence for impermissible propensity purposes"). As *Crowder I* put it, "the defendant's concession of intent and knowledge deprives the evidence of any value other than what Rule

404(b)'s first sentence unambiguously prohibits: 'to prove the character of a person in order to show action in conformity therewith.'" *Id.* at 1407. The evidence remains relevant, just as the excluded evidence in *Old Chief* remained relevant. But after a defendant has conceded the purpose for which the government seeks to introduce the evidence, that evidence no longer serves any function except to put character evidence before the jury. Rule 404(b)'s first sentence therefore requires its exclusion.

Far from invalidating *Crowder I, Old Chief* supports its result. In *Old Chief,* the Supreme Court confronted a scenario similar to the one we face here—a defendant trying to stipulate away an element of his crime in order to preclude the admission of prejudicial evidence—but the case arose under a different rule, Rule 403. Unlike Rule 404(b)'s first sentence's flat prohibition against using bad acts evidence to demonstrate character, Rule 403 simply requires courts to balance the prejudicial effect of bad acts evidence against its probativeness. Notwithstanding the fact-sensitive nature of Rule 403 balancing at which district court discretion "is at its height," *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 555 (D.C.Cir.1993), the Court ruled that when Old Chief offered to remove his felon-status from the case by stipulation, "the only reasonable conclusion was that" evidence of his status that revealed the name or nature of his prior felony would be so prejudicial that a district court's admission of such evidence would always constitute an abuse of discretion, *Old Chief,* 519 U.S. at —— – ——, 117 S.Ct. at 655–56. Explaining that the name and nature of the defendant's felony remained relevant, *id.* at ——, 117 S.Ct. at 649, and reiterating the usual rule that a defendant's stipulation "generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense," *id.* at ——, 117 S.Ct. at 651, the Court nevertheless found the risk of undue prejudice so great as to require a *per se* exclusionary rule. If relevance was insufficient under Rule 403's relatively flexible standard, *see id.* at ——, 117 S.Ct. at 652 (distinguishing "probativeness" under Rule 403 from "relevance" under

Rule 401), it is certainly insufficient under Rule 404(b)'s absolute bar.

As the court now interprets Rule 404(b), the Rule's first sentence never comes into play unless the government is careless enough to confess that its only motive for introducing the evidence is to prove the defendant's bad character. The clear implication of today's decision is that Rule 404(b) is satisfied if propensity evidence is remotely relevant to any issue, even a conceded issue that the government need never prove. *See* Maj. Op. at 1206. Rule 404(b) requires more. It imposes an affirmative burden on prosecutors to articulate—and on courts to approve—material, non-propensity purposes for admitting bad acts evidence. As the Supreme Court put it in *Huddleston,* "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." 485 U.S. at 686, 108 S.Ct. at 1499. This burden constitutes the defendant's first and most important protection against the harmful effects of character evidence. Once that threshold is passed, the evidence's relevance will often tip Rule 403's scales in the government's favor, and once the evidence is admitted the curative effects of limiting jury instructions are an "'unmitigated fiction.'" *Daniels,* 770 F.2d at 1118 (quoting *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring)).

To be sure, a single piece of evidence can serve many purposes, *see* Maj. Op. at 1208–09, but that does not automatically satisfy Rule 404(b). The government must actually articulate one of these multiple purposes as a basis for introducing the evidence. If it does, the evidence can come in under the second sentence of Rule 404(b), subject to Rule 403 balancing. This balancing is precisely what *Crowder I* held should happen in Crowder's case on remand, *see Crowder I,* 87 F.3d at 1413–14. It also could have happened in Davis's case if the government had articulated an unconceded material purpose for the evidence such as motive. By holding that the mere relevance of character evidence satisfies Rule 404(b), this court relieves the government from even this relatively light burden of articulation and persuasion.

The court quotes lengthy passages of *Old Chief* dicta regarding prosecutorial narrative and the jury's expectations about proper proof, *see* Maj. Op. at 1207–08, reiterating *Old Chief*'s point that intrinsic evidence may be essential to "creat[e] a coherent narrative of [a defendant's] thoughts and actions in perpetrating the offense for which he is being tried." *Old Chief,* 519 U.S. at ——, 117 S.Ct. at 656. By their very nature, however, "other bad acts" are separate from, not integral to, "the offense ... being tried." *Id.* In Davis's case, the other bad acts evidence concerned events that took place before the offense with which he was charged. The bad acts in Crowder's case occurred after his first trial. In neither case, therefore, did the evidence have any place in the government's narrative about what actually happened on the dates of the alleged crimes for which the defendants were on trial, unless, of course, the government were permitted to argue based on propensity. But Rule 404(b) requires the prosecution to produce some reason other than propensity to connect a defendant's prior or subsequent acts with the "narrative" of the charged offense. Absent such a connection, excluding the bad acts evidence does not detract from the prosecution's story in any way, except by forbidding tales of defendants' bad character. Indeed, *Old Chief* recognized that the government's authority to construct its narrative of the charged crime is cabined by Rule 404(b). *Id.* at ——, 117 S.Ct. at 651.

The court says that *Crowder I* would have permitted defendants to control the prosecution's presentation of its evidence, but most evidence never implicates Rule 404(b) at all. Generally speaking, defendants' concessions cannot prevent the admission of non-bad acts evidence intrinsic to their crimes, such as Crowder's beeper. Presumptively admissible, such evidence is subject only to Rule 403, under which a concession functions merely as one factor in the balance. Only because Rule 404(b), a specialized rule of evidence, disfavors character evidence and imposes special

burdens on the prosecution can an unambiguous concession block admission of such evidence.

According to the court, the similarity in the bags involved in Crowder's two drug transactions made it more likely that he knew the substances were cocaine. *See* Maj. Op. at 1208–09. Because Crowder conceded knowledge, however, this evidence would have to show something more, such as modus operandi. Although the prosecution offered the evidence for that purpose, the district court excluded it, finding that the government failed to establish any unique similarities between the past and present acts. *See Crowder I,* 87 F.3d at 1413.

The court worries that a confused jury may decline to convict, but Crowder's and Davis's willingness to accept a "must convict" jury instruction removes this danger. The instruction also answers the court's concern that the stipulations were unclear because they failed to refer to defendants by name, *see* Maj. Op. at 1207–08. The offered instruction makes abundantly clear that possession, not knowledge or intent, remains the only issue in dispute. *See* Appellants' Supp. Br. at 9; *Crowder I,* 87 F.3d at 1412. As *Crowder I* explained, both defense counsel made clear at trial that possession was the only issue:

> Davis's attorney ... told the district court that "[o]nce the government has proved possession in this case, it's our position they've proved knowledge and intent as well." In both opening statement and closing argument, Davis's attorney reiterated that knowledge and intent were not at issue.... [Crowder's] attorney [likewise] stated that "[t]he issue in this case is: Did he or did he not possess those drugs? That's the threshold thing that the Government has to be able to prove in this case. The rest of it in terms of what the facts—what the evidence will show, we concede."

*Id.* at 1411–12.

As *Crowder I* also explained, the instruction itself promotes clarity. *See id.* at 1415. Unlike limiting jury instructions that are used when character evidence is admitted and that require juries to ignore the obvious implication of bad acts evidence, a "must convict" instruction would not require the jury to perform "'mental gymnastic[s].'" *Daniels,* 770 F.2d at 1118 (quoting *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir. 1932)). Rather, the trial court simply instructs the jury that to convict it need find only possession beyond a reasonable doubt. Hardly confusing, this approach protects defendants from the prejudice of bad acts evidence while preserving the government's ability to prove its case.

Aside from depriving the government of the ability to introduce character evidence, Crowder's and Davis's concessions and proposed jury instructions would have made the government's task easier—in effect transforming these distribution cases into simple possession cases. Why, then, does the government decline the offer? The answer is this: Bad acts evidence is so prejudicial that by using it, the government is more likely to convict, even with the burden of proving all three elements of the crime, than if it need prove only possession but cannot use the evidence. "Let's not kid ourselves," said then-Chief Judge Penn, the trial judge in Crowder's case, "the reason the government seeks to introduce [404(b) evidence] is because it's prejudicial." *United States v. Crowder,* Crim. No. 91–351, Trial Tr. at 603 (D.D.C. March 3, 1992).

SILBERMAN, Circuit Judge, dissenting:

I adhere to the views I expressed in the first *en banc* case, *see United States v. Crowder,* 87 F.3d 1405, 1416 (D.C.Cir.1996). I would only add that, with all due respect to the Supreme Court, I do not understand why it thought that this case was affected by the Court's opinion in *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).